IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES of AMERICA                                    PLAINTIFF/RESPONDENT

V.                          No.  5:11-CV-05211-JLH
                            No.  5:09-CR-50103-JLH

MANUEL A. GAXIOLA                                           DEFENDANT/PETITIONER

## REPORT AND RECOMMENDATION

Before the undersigned for report and recommendation is the petitioner's Habeas Corpus Petitions, *See ECF No.* 79 filed September 6, 2011, under 28 U.S.C. Section 2255. The Government filed its Response, *See ECF No.81* on September 26, 2011, and the Petitioner filed his Reply, *See ECF No. 83* on October 7, 2011. The matter is now ready for a Report and Recommendation.

### I.  Background

On September 16, 2009, a criminal complaint was filed against Manuel A. Gaxiola (hereinafter Gaxiola), charging him with conspiracy to distribute and distribution of methamphetamine. (ECF No.1). Gaxiola was arrested on September 17, 2009. (ECF No. 2) On November 4, 2009, an indictment was returned against Gaxiola charging him with conspiracy to distribute methamphetamine (count1), distribution of methamphetamine(count 2), three counts of distribution of more than 5 grams of actual methamphetamine (counts 3,5,6) and distribution of more than 50 grams of actual methamphetamine (count 7). (ECF No.14). On January 6, 2010, pursuant to a Plea Agreement (ECF No. 39), Gaxiola pled guilty to count 7,

distribution of more than 50 grams of actual methamphetamine. (Docket Entry 38).

On May 24, 2010, a sentencing hearing was held. (ECF No. 50) The PSR assessed Gaxiola a two point enhancement pursuant to U.S.S.G. § 3B1.1(c) for being an organizer, leader, manager, or supervisor in the criminal activity. (PSR ¶ 50) The PSR determined that Gaxiola was in criminal history category I and had a final offense level of 31 which would have resulted in an advisory guideline range of 108 - 135 months. However, because the mandatory minimum sentence for the offense for which Gaxiola plead guilty was 120 months and because Gaxiola did not qualify for the safety valve provision, the PSR determined the advisory guideline range to be 120 -135 months. (PSR ¶ 77)

Although Gaxiola did not object to the facts set forth in the PSR, he did object to paragraph 50 of the PSR which assessed a two point enhancement pursuant to U.S.S.G. § 3B1.1(c). (Addendum to PSR Objections 1) Gaxiola also asserted that, but for the role in the offense enhancement, he would have qualified for the safety valve provision of U.S.S.G.§5C1.2. (Addendum to PSR Objections 2).

At the sentencing hearing, Gaxiola acknowledged that his objections to the PSR were not to any of the facts contained in the PSR but were legal arguments as to the proper application of the Guidelines. (Sen.Tr. 18-19.) Gaxiola, citing Blakely v. Washington and Apprendi, argued that the court should apply a beyond a reasonable doubt standard in determining whether he should be assessed a two level enhancement pursuant to U.S.S.G. § 3B1.1(c) and not a preponderance of the evidence standard. (Sen.Tr. 21)

The District Court held that because the Supreme Court's ruling in Booker and Fanfan, eliminated the mandatory nature of the sentencing guidelines, the court need not apply a beyond a

-2-

reasonable doubt standard in determining facts that moved the guidelines up or down. (Sen.Tr. 33) The District Court found that there was more than ample evidence in the unobjected to facts of the PSR to support the two level enhancement pursuant to U.S.S.G. § 3B1.1(c) for Gaxiola being a manager, organizer, or leader. (Sen.Tr. 34 and 35) The District Court also found the safety valve provision did not apply. (Sen.Tr. 37)

  Gaxiola was sentenced to 120 months imprisonment, 5 years supervised release, a $25,000 fine, and a $100 special assessment. (ECF No. 56). This sentence was at the bottom of the guideline and was the required mandatory minimum sentence for the offense to which Gaxiola plead guilty. On May 26, 2010, Gaxiola filed a notice of appeal. (ECF No.66). On March 30, 2011, the Eighth Circuit entered its Judgement affirming the district court's sentence finding that a two level leadership enhancement was warranted and that leadership enhancement precluded Gaxiola from receiving safety valve relief. *See United States v. Gaxiola*, 414 Fed. Appx. 889 ( 8th Cir. 2011). On September 6, 2011, Barajas filed this instant Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No.79).

## II. Discussion

  The Defendant contends that his attorney was ineffective for failing to argue that the Government breached the plea agreement entered into between the Government and the Defendant. (ECF No. 79, p. 4).  The Defendant states that "his sentence was improperly enhanced with 2-level base in his leadership role in the offense, because the plea agreement did not states that a 2-level enhancement would be imposed, and the government advocated for an increase under USSG § 3B1.1(c), in violation of Petitioner's Due Process Rights". (Id.).

**A. Ineffective Assistance Generally**:

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel. *U.S. Const. amend. VI.* The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' " *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (citing *McMann v. Richardson*, 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)).

A defendant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to § 2255. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000);  2254. *Cox v. Wyrick,*  642 F.2d 222, 226 (C.A.Mo., 1981) To establish a claim of ineffective assistance of counsel, the Defendant must satisfy the two-part test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

First, under the "deficient performance" component, he must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment." *Strickland*, 466 U.S. at 687. That showing can be made by demonstrating that counsel's performance "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 522, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)(internal citations omitted.

Second, under the "prejudice" component, he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. see also, i.e. *United States v  Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005)(post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense).

To satisfy this "prejudice" prong, Defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome." *U.S. v. Rice*, 449 F.3d 887 at 897 (internal quotations omitted). Thus, it is not sufficient for a defendant to show that the error had some "conceivable effect" on the result of the proceeding because not every error that influences a proceeding undermines the reliability of the outcome of the proceeding. *Morales v. Ault*, 476 F.3d 545 (8th Cir.2007) (citing *Odem v. Hopkins*, 382 F.3d 846, 851 (8th Cir.2004)). Additionally, actual prejudice does not exist where a petitioner, at best, suffers the mere possibility of prejudice. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982); *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir.1996) (mere possibility does not equal actual prejudice). Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir.1999).

Also, to the extent that Petitioner's claims arise out the plea process, he must show a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See *Strickland*, 466 U.S. at 688; *United States v. Prior*, 107 F.3d 654, 661 (8th Cir. 1997).

**B. Plea Agreement**

The Defendant contends that there was not a "statement about his role as a organizer or leader in the plea agreement" and that the government "breached the agreement by advocating for

a sentence enhancement under U.S.S.G. § 3B1.1(c)" [1] (ECF No. 79, p. 19).

Plea agreements are contractual in nature and should be interpreted according to general contractual principles. *See United States v. DeWitt*, 366 F.3d 667, 669 (8th Cir.2004). Due process may be violated if there is a breach of a promise that induced a guilty plea." *United States v. Sanchez*, 508 F.3d 456, 460 (8th Cir.2007) (internal citation omitted). "The party asserting the breach-here, the Defendant-has the burden of establishing a breach." *United States v. Smith*, 429 F.3d 620, 630 (6th Cir.2005). Where a plea agreement is ambiguous, the ambiguities are construed against the government. *United States v. Andis*, 333 F.3d 886, 890 (8th Cir.2003) (en banc). Allowing the government to breach a promise that induced a guilty plea violates due process.

In the Plea Agreement (ECF No.39), the government agreed to dismiss the remaining counts of the indictment once the court had pronounced sentence. ( Plea Agreement p. 1 ¶ 1) The Plea Agreement contained a section entitled "Concessions by the Government" which provided as follows:

> "The government agrees to recommend that the defendant be sentenced within the applicable guideline range as determined by the court." ( Plea Agreement p. 6 ¶ 14) "The government agrees not to object to a finding by the probation office or a ruling of the court which awards the defendant an appropriate-level decrease in the base offense level for acceptance of responsibility. If the offense level in the Presentence Report is 16 or greater, and the Presentence Report awards two points for acceptance of responsibility, the United States agrees to move for an additional one-point reduction for acceptance of responsibility for a total of three points." ( Plea Agreement p. 6 ¶ 15).

The Plea Agreement contained a section entitled " Relevant Conduct Considered" which

---

[1] Under § 3B1.1(c), a defendant's offense level is increased by two levels if "the defendant was an organizer, leader, manager, or supervisor in any criminal activity." U.S.S.G. § 3B1.1(c).

provided as follows:

> "At the sentencing hearing, the government will be permitted to bring to the Court's attention, and the Court will be permitted to consider, all relevant information with respect to defendant's background, character and conduct, including the conduct that is the subject of this investigation for which he has not been charged up to the date of this Agreement, and/or which is the basis for any of the counts which will be dismissed pursuant to this agreement, as provided by § 1B1.3 of the Sentencing Guidelines." ( Plea Agreement p. 5 ¶ 12)

The Plea Agreement is silent on the issue of role enhancement and does not provide that the Defendant would receive any specific sentence. There is no breach of a plea agreement when the government seeks a 2-level role enhancement when the agreement is silent in that regard. *See United States v. Cheek*, 69 F.3d 231(8th Cir. 1995); See also *United States v. Kramer*, 12 F.3d 130, 131-32 (8th Cir.1993), cert. denied, 511 U.S. 1059, 114 S.Ct. 1629, 128 L.Ed.2d 352 (1994).

Also, in *United States v. Peck*, 496 F.3d 885, 889 (8th Cir.2007), the court found that the government did not breach its promise not to file additional charges when it sought sentencing enhancements based on additional crimes where the plea agreement was silent on the question of enhancement. Similarly, the government did not breach a Minnesota plea agreement, which was silent on the question of additional charges, when it prosecuted Van Nguyen in Iowa for a separate conspiracy. *U.S. v. Nguyen* 608 F.3d 368, 374 (C.A.8 (Iowa),2010).

As the 8th Circuit Court of Appeals found "[W]e also see no clear error in the district court's finding that Gaxiola was subject to the § 3B1.1(c) leadership enhancement. According to the unobjected to information in the presentence investigation report, Gaxiola told an undercover officer that he was the boss of one of his codefendants and he directed another codefendant to make a delivery of methamphetamine on his behalf. *See United States v. Bewig*, 354 F.3d 731,

738 (8th Cir.2003) (defendant need only have supervised one other participant in criminal activity to justify leadership enhancement)". *U.S. v. Gaxiola,* 414 Fed.Appx. 889, 891, 2011 WL 1135756, 1 (C.A.8 (Ark. (C.A.8 (Ark.),2011).

The Defendant contends that paragraph 11 of the Plea Agreement proves that the parties had "discussions" concerning the plea agreement. The paragraph in total reads as follows:

> The defendant acknowledges that discussions have taken place concerning the possible guideline range which might be applicable to this case. The defendant agrees that any discussions merely attempt to guess at what appears to be the correct guideline range and do not bind the district court. Further, the defendant acknowledges that the actual range may be greater than contemplated by the parties. In the event that the actual guideline range is greater than the parties expected, the defendant agrees that this does not give him the right to withdraw his plea of guilty.

There is no specific recommendation in this language of a particular term but only that any discussions conducted were an attempt to "guess" at what appears to be the range. The Defendant does not contend that any U.S. Attorney or his defense counsel or the court made any specific promises to him.

The Defendant cites *United States v. Austin* in support of his proposition that the Government breached the plea agreement. In Austin as here the plea agreement was silent as to the "propriety or applicability "of any 3B1.1 enhancement. In a prior agreement the Government had specifically specified that Austin would be subject to a four-level enhancement. The Defendant objected and the Government removed that provision from the plea agreement. Austin then contended that since the provision was removed from the prior agreement and not mentioned in the executed plea agreement that the Government was precluded from seeking any enhancement. The Court of Appeals found that the "District Court properly applied a two-level

enhancement for Austin's supervisory or managerial role in the Oak Street Posse". *See U.S. v. Austin*, 255 F.3d 593, 598 (C.A.8 (Ark.),2001). Rather than support the Defendant's contention this case supports the Government.

The Defendant also cited *U.S. v. Fowler*, 445 F.3d 1035 (C.A. 8(Mo), 2006 however the plea agreement in the Fowler provided " the applicable base offense*1037 level for the conduct, and what enhancements applied. ( Id. at 6-7). This section concluded, "[b]ased on these recommendations, the parties estimate that the Total Offense Level is 25."  At sentencing the U.S. Attorney argued for enhancements that placed the Total Offense Level to 29.  The Court of Appeal reversed and remanded based on the explicit recommendation of an offense level.  Such is not the case here.

The Defendant also cited *U.S. v. Gonczy*, 357 F.3d 50 (C.A. 1 (Mass), 2004 however under that plea agreement "the government was obligated to recommend "incarceration at the low end of the [United States Sentencing] [G]uideline[s] range calculated by the court ....," although the agreement specified that such recommendation was not binding on the district court."  The AUSA then at the sentencing hearing stated that Gonczy was the "brains" behind the operation, he ruined many lives, and that what he did was blatant fraud." *53.  The District Judge sentenced Gonczy at the upper end of the sentencing guidelines.  The court of appeals felt the AUSA's argument went beyond the plea agreement and reversed.  The facts in Gonczy are not comparable to the facts in the present case because the Defendant's involvement was set forth in the PSR and as pointed out the government made no commitment not to seek enhancement.

The court has reviewed the balance of the cases cited by the Plaintiff and find that non are on point.

Any argument that the Defendant's attorney would have made contending that the government had breached its agreement would have been meritless. It cannot be ineffective assistance not to raise a meritless argument. *Larson v. U.S.* 905 F.2d 218, 219 (C.A.8 (Minn.),1990). *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir.1999) ("An attorney's failure to raise a meritless argument .. cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

## C. Evidentiary Hearing

Finally, Petitioner does not state grounds sufficient to require an evidentiary hearing. An evidentiary hearing on a § 2255 motion must be granted unless the motion, files and records of the case establish conclusively that the petitioner is not entitled to relief. *Kingsberry v.United States*, 202 F.3d 1030, 1032 (8th Cir. 2000) A § 2255 motion can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible or conclusions rather than statements of fact. *Delgado v. United States*, 162 F.3d 981, 983 (8th Cir.1998). "There is no requirement of a hearing where the claim[s] [are] based solely on vague, conclusory, or palpably incredible allegations or unsupported generalizations." *Amos v. Minnesota*, 849 F.2d 1070, 1072 (8th Cir.), cert. denied, 488 U.S. 861, 109 S.Ct. 159, 102 L.Ed.2d 130 (1988).

It is clear from the record before the court that the government did not breach the Plea Agreement. *See, United States v. Kramer*, 12 F.3d 130 (8th Cir. 1993)( "[I]n determining whether the government has fulfilled its obligations under a plea agreement, we look to the

agreement's provisions." Id. at 131).

### III.  Conclusion

Based upon the forgoing I recommend that the instant motion, filed under 28 U.S.C. §2255 be dismissed with prejudice.

**The parties have fourteen days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

Dated this 14th day of October 2011.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE  JUDGE