IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                    PLAINTIFF/RESPONDENT

    V.            Criminal No. 5:09-cr-50103-001

MANUEL A. GAXIOLA                           DEFENDANT/MOVANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Currently before the Court is a motion filed by the Defendant/Movant Manuel A. Gaxiola (hereinafter "the Defendant") entitled **"Motion for the Return of Property Under Federal Rule of Criminal Procedure 41(e)" (Doc. 86)**. The Government has filed a Response (Doc. 88) and the Defendant has filed a Reply (Doc. 89) thereto. This matter was referred to the undersigned for report and recommendation on January 3, 2012. (Doc. 90). On June 13, 2012, a hearing was held before the undersigned, who now makes the following findings and recommendations.

### BACKGROUND

1. On January 6, 2010, the Defendant pled guilty to distributing more than 50 grams of actual methamphetamine. (Doc. 39.) On May 26, 2010, the Defendant was sentenced to 120 months imprisonment, five years supervised release, a $25,000.00 fine, a $100.00 special assessment, and the denial of federal

benefits for a period of five years. (Doc. 56.) On November 4, 2011, the Defendant filed the motion now before the Court, alleging that upon his arrest, the Government "confiscated the following properties:"

    1.   The Quantity of $5,000.00
    2.   The Quantity of $80.00
    3.   A Brown Wallet
    4.   A Black Tahoe VIN #GNEK13Z72R280439

(Doc. 86 at p. 2).

    2.   The Defendant seeks the return of these items, asserting that the indictment did not contain a forfeiture count; that the items were "not a product of any crime;" that the items no longer have any evidentiary value; and that the Government failed to notify him of any forfeiture proceedings against him. (Doc. 86). Defendant also contends that the Tahoe was owned by his wife and his father-in-law.[1]

    3.   The Government asserts that the Tahoe and $2,500.00 of the currency seized were properly administratively forfeited after notice was sent by certified mail both to the Defendant's attorney of record, Kimberly Weber, and to the Defendant himself at the Washington County Detention Center (hereinafter "WCDC"). The Government also asserts that the Defendant has no possessory interest in the $2,280.00 in DEA funds which were used to purchase methamphetamine from him.

---

[1] The Court notes that the affidavit of John Hieronymus, Forfeiture Counsel for the DEA, sets forth the steps taken by Defendant's attorney, Milton DeJesus, on behalf of Defendant's wife to recover the Tahoe, and her request was denied. It is not necessary to address this issue, as it is not being challenged in this proceeding.

    4. In an affidavit submitted in support of the Government's response to Defendant's motion, Drug Enforcement Administration (hereinafter "DEA") Special Agent Bryan Rorex states that an undercover officer purchased methamphetamine from the Defendant on three occasions, resulting in the Defendant's arrest on September 17, 2009. During one of the transactions and at the time of his arrest, the Defendant was driving a black Chevrolet Tahoe. According to Agent Rorex, on the day of the Defendant's arrest, officers executed a search warrant at his residence and seized $4,780.00 in currency,[2] of which, $2,280.00 was identified as DEA funds used to buy methamphetamine from the Defendant. Agent Rorex states that the Defendant's wallet was also seized, which contained $80, also identified as DEA funds that had been used to buy methamphetamine from Defendant, and was subsequently placed in his property at the jail. (Doc. 87-1.) Agent Rorex echoed these facts at the hearing.

    5. The Government also submitted a declaration from John Hieronymus, Forfeiture Counsel for the DEA, stating the following with regard to the administrative forfeiture of the $2,500.00 in currency seized from the Defendant:

    \*    $2,500.00 of the currency seized from the Defendant was submitted to the DEA for administrative forfeiture.

---

[2] Although Rorex's affidavit reflects $5,700 in currency was seized, Rorex testified at the hearing that this was an error, and that the real amount seized was $4,700, plus the $80 found in Defendant's wallet.

-3-

* On October 13, 2009, the DEA sent written notice of the seizure by certified mail to the Defendant "c/o Kimberly Weber/Esq." On October 16, 2009, an individual presumably with Ms. Weber's office signed for and accepted delivery of the notice. (Doc. 87-2 at pg. 20). The Court notes that Ms. Weber was appointed to represent the Defendant at his initial appearance on September 21, 2009, but was allowed to withdraw on October 16, 2009, as another attorney – Milton DeJesus – entered an appearance on October 14, 2009, on the Defendant's behalf.

* On October 13, 2009, the DEA sent written notice of the seizure by certified mail to the Defendant at the WCDC. On November 23, 2009, the United States Postal Service returned the notice to the DEA, stamped "RETURN TO SENDER. ATTEMPTED NOT KNOWN."

* The seizure of the currency was published in <u>The Wall Street Journal</u> on October 26, November 2, and November 9, 2009.

* On November 16, 2009, the DEA sent written notice of the seizure by certified mail to the Defendant at the WCDC. An individual by the name of "Amanda Caudle" signed for and accepted delivery of the notice. The Court notes that the "Date of Delivery" is left blank on the receipt form. (Doc. 87-3 at pg. 2.)

* On February 24, 2010, after the time limit for filing a claim to the currency had expired and no properly executed claim had been received by the DEA, the DEA forfeited the $2,500.00 in currency to the United States.

6. With regard to the Tahoe seized and administratively forfeited, Mr. Hieronymus states the following:

* A 2002 Chevrolet Tahoe was seized from the Defendant on September 17, 2009, the date of his arrest, and submitted to the DEA for administrative forfeiture. (Doc. 87-2 at p.6).

* On October 13, 2009, the DEA sent written notice of the seizure by certified mail to the Defendant at the WCDC. On October 19, 2009, the United States Postal Service returned the notice with the notation, "RETURN

    TO SENDER. ATTEMPTED NOT KNOWN. UNABLE TO FORWARD." (Doc. 87-2 at pgs. 7-8).

* On October 13, 2009, the DEA sent written notice by certified mail to the Defendant "c/o Kimberly Weber/Esq." On October 16, 2009, an individual presumably with Ms. Weber's office signed for and accepted delivery of the notice. (Doc. 87-2 at p. 8).

* Seizure of the vehicle was published in the <u>Wall Street Journal</u> on October 26, November 2, and November 9, 2009. (Doc. 87-2 at p. 9).

* On November 13, 2009, the DEA sent written notice of the seizure by certified mail to the Defendant at the WCDC. An individual by the name of "Brenda Allred" signed for and accepted delivery of the notice. The Court notes that the date of delivery appears to be left blank on the receipt form; if a date is written on the form, it is illegible. Doc. 87-3 at p. 23).

* On March 22, 2010, after the time limit for filing a claim to the vehicle had expired and no properly executed claim had been received by the DEA, the DEA forfeited the Tahoe to the United States. (Doc. 87-2 at p. 12).

7. In his reply, the Defendant asserts that he did not receive actual written notice of the forfeitures, nor did he receive "constructive notice through the publication in the Wall Street Journal," as the WCDC did not receive this publication and, in any event, the Defendant cannot read English.

8. In the Government's response to Defendant's motion, which was filed eight days prior to the hearing, the Government attached as an exhibit the affidavit of Susan Hunthrop, who was the legal assistant for attorney Kimberly Weber, Defendant's former attorney. She stated in her affidavit that on October 16, 2009, she received Notices of Seizures from the DEA

-5-

involving $2,500.00 U.S. Currency and 2002 Chevrolet Tahoe which were addressed to Defendant, and on that same day, she sent the notices via e-mail to attorney Milton DeJesus.  (Doc. 102-1).

9.  At the hearing held before the undersigned, Defendant testified that about a month or two months after he was arrested, "they" sent him some papers about the truck, as well as what he believed were papers regarding the money that was seized, and that he gave the papers to Mr. DeJesus "right away, I think in a week."  When shown the actual notices at the hearing by the undersigned, Defendant testified that they looked like the ones he received.  He knew that one paper related to the Tahoe and the other related to $2,500.  Defendant testified that he told Mr. DeJesus to fight for his "stuff" and try to get the truck and "stuff" back.  Defendant admitted that he knew the government was attempting to retain the Tahoe and money seized.  Defendant also testified that it was possible some of the money seized "could be from drugs" but could also be from money he earned as a carpenter.  He testified that he had been paid for his carpentry work fifteen days prior to his arrest.

10. The Court also received testimony at the hearing from Mr. Milton DeJesus, via telephone, who represented Defendant subsequent to Ms. Kim Weber.  After Mr. DeJesus reviewed his file, he advised the undersigned that he received the e-mail with the notices on October 16, 2009, from Ms. Hunthrop, legal

assistant for Ms. Kim Weber. Mr. DeJesus could not say whether copies of the forfeiture notices were sent to Defendant at the jail.

11. Agent Rorex testified that of the total amount of money seized, $2,200 represented "buy money" and the $80 found in Defendant's wallet was also "buy money." The remaining $2,500 and the Tahoe were administratively forfeited.

**DISCUSSION**

**A. Administrative Forfeiture of the Tahoe and $2,500:**

12. The Controlled Substances Act authorizes forfeiture to the Government of certain property seized from drug offenders, including vehicles used to transport controlled substances and "moneys ... or other things of value furnished ... in exchange for a controlled substance" or representing "proceeds traceable to such an exchange." 21 U.S.C. § 881(a)(4) and (6). Property having a value of under $500,000.00 can be administratively forfeited, and the declaration of forfeiture has the same force and effect as an order of forfeiture entered by a court. 19 U.S.C. §§ 1607, 1609. Written notice of the seizure must be sent to each party who appears to have an interest in the seized property within 60 days of the date of seizure. 19 U.S.C. § 1607(a); 18 U.S.C. § 983(a)(1)(A)(I). Any person entitled to written notice who does not receive such notice may file a motion to set aside a declaration of forfeiture, "which motion

-7-

shall be granted if ... the Government .. failed to take reasonable steps to provide such party with notice; and .. the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim." 18 U.S.C. § 983(e)(1).

13. While the Defendant cited Rule 41 of the Federal Rules of Criminal Procedure in support of his Motion for the Return of Property, the Court will construe his motion relating to the items administratively forfeited (Tahoe and $2,500) as seeking relief under 18 U.S.C. § 983(e)(1), which is the proper avenue to challenge the adequacy of notice of an administrative forfeiture.

14. In Nunley v. Department of Justice, 425 F.3d 1132 (8th Cir. 2005), the Court held that "due process is satisfied if the method of notice is 'reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Id. at 1135 (citation omitted). "Notice by mail is ordinarily presumed to be constitutionally sufficient," as is notice sent to a defendant in care of his attorney. Id. (citations omitted)

15. In his Motion for the Return of Property and in his reply to the Government's response, Defendant contended that he did not receive the forfeiture notices at the jail. It was

AO72A
(Rev. 8/82)

unclear whether his attorney at the time, Mr. DeJesus, received the notices, as they were mailed to Defendant's former attorney, Ms. Weber.  The undersigned, therefore, believed an evidentiary hearing was warranted.

At the hearing, Defendant, in essence, conceded that he received the notices and advised his attorney, Mr. DeJesus, to fight for his "stuff" and try to get it back.  The undersigned notes that Defendant's mail history log from the WCDC, admitted at the hearing as Government's Exhibit No. 4, confirms that Defendant received two items of mail from the DEA during the time period in question. (Gov't Ex. 4 at pg. 4).  Further, Mr. DeJesus testified that he received the e-mail from Ms. Weber's office forwarding the forfeiture notices.

Accordingly, the undersigned finds that Defendant received timely notice of the forfeiture of both the Tahoe and the $2,500 in currency, and he is, therefore, not entitled to relief under § 983(e)(1).

**B. $2,280 Currency Seized**:

16.  With respect to the $2,280 ($2,200 in the safe and $80 from the wallet) that was seized in addition to the Tahoe and $2,500, the Court will treat Defendant's motion as one under Fed.R.Crim.P. 41(g).  "A Rule 41(g) motion 'is properly denied if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to

-9-

forfeiture or the government's need for the property as evidence continues.'" Jackson v. United States, 526 F.3d 394, 397 (8th Cir. 2008)(quoting United States v. Vanhorn, 296 F.3d 713, 719 (8th Cir. 2002).

Agent Rorex testified that a controlled buy of methamphetamine was made from Defendant with $2,500 in recorded buy money on September 16, 2009.  According to Agent Rorex, a subsequent comparison of the serial numbers of the money seized with the recorded buy money showed that $2,200 of the money was DEA funds which had been used to buy methamphetamine from Defendant.  (Doc. 87-1 at p. 2).  Rorex testified that the $80 recovered from Defendant's wallet was also identified by serial numbers on the bills as DEA funds that had been used to buy methamphetamine from Defendant.  (Doc. 87-1 at p.2-3).

At the hearing, Defendant was unable to definitely state that any of the $2,280 was "clean" money.  When asked if he believed he was entitled to the $2,280, he said "Possibly, I didn't know if that money was coming from drugs because I also worked."  When the undersigned advised Defendant that he had to demonstrate that he was entitled to the money, he could only respond that "possibly" it could be from drugs, but that it could be "good money too" because he was also working and making good money and was gathering money to go to Mexico.

The Court believes that Defendant has failed to meet his

-10-

burden of proving he had a possessory interest in the $2,280. The Government has sufficiently proven the $2,280 represents "buy money," or DEA funds. Accordingly, Defendant is not entitled to a return of this money. Cf. United States v. Felici, 208 F.3d 667, 670(8th Cir. 2000)(requiring the district court to hold an evidentiary hearing to determine whether "drug-related materials" were limited derivative contraband; noting that "it makes scant sense to return to a convicted drug dealer the tainted tools used or intended to be used in his illegal trade when the same were lawfully seized").

**CONCLUSION**

17. Based upon the foregoing, the undersigned believes that Defendant has not met his burden of proving that he is entitled to a return of the property that was administratively forfeited, as he had adequate notice of the forfeiture proceedings. As to the remaining $2,280 in currency that was seized, Defendant did not meet his burden of proving that he had a possessory interest it. Accordingly, the undersigned recommends that Defendant's Motion be denied.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both**

-11-

AO72A
(Rev. 8/82)

**timely and specific to trigger de novo review by the district court.**

DATED this 5th day of November, 2012.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE